UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RCSUS, INC., | ) | CASE NO. 5:16CV2820 |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | |
| | ) | MAGISTRATE JUDGE |
| AC KARMA REPAIR, LLC., et al., | ) | GEORGE J. LIMBERT |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | MEMORANDUM OPINION & ORDER |
| BERRYLANE TRADING, INC., | ) | |
| | ) | |
| Defendant/Third-Party Defendant | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FELIX INTERNATIONAL, LLC., | ) | |
| | ) | |
| Defendant/Third-Party Defendant | ) | |

This matter is before the Court on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") filed by Defendants/Third-Party Defendants Berrylane Trading, Inc. ("Berrylane") and Felix International, LLC. ("Felix")(collectively "Defendants"). ECF Dkt. #64. Defendants move to dismiss the first amended complaint filed against them by Plaintiff RCSUS, Inc. ECF Dkt. #s 38, 64.

For the following reasons, the Court DENIES Defendants' motion to dismiss the claims against them in Plaintiff's first amended complaint. ECF Dkt. #64.

## I.     FACTUAL AND PROCEDURAL HISTORY

On November 18, 2016, Plaintiff filed its initial complaint against Defendant AC Karma Repair, LLC. ("ACK") indicating that it was a corporation that was engaged in the buying and selling of cell phones and ACK was engaged in the "procurement, refurbishment, and sale of mobile

devices, including cell phones and Smartphones in particular. ECF Dkt. #1 at 2. Plaintiff set forth a series of six written transactions between the parties that occurred in August of 2016 for the sale of various iPhone 5S cell phones by ACK to Plaintiff with specific requirements, particularly that the cell phones be unlocked, meaning that they could be used in any country and by any mobile network provider, and that ACK have unencumbered legal titles to the phones free of any third party claims or liens. *Id*. at 2-14. Plaintiff set forth the details concerning the supplier's agreements that ACK executed and delivered to Plaintiff for each transaction, in which ACK confirmed that it was the sole owner of the cell phones and that the ACK was in custody of the phones which were free of any charges. *Id.* at 3. Plaintiff further outlined the invoices that ACK issued to Plaintiff for each purchase order. *Id*. at 3-4.

Plaintiff alleged that the phones ordered in each of the six transactions were delivered by ACK to Plaintiff's freight forwarder, Prime Transport, in Florida, where the phones were then shipped to Plaintiff's various clients in the United States and all over the world. ECF Dkt. #1 at 2-14. Plaintiff further averred that ACK sold it a total of 3,550 cell phones and it paid ACK in total the sum of $978,130.00. *Id*. at 15. Plaintiff alleged that of the 3,550 cell phones for which they paid money and then sold to their customers, 1,706 of them were stolen property and were confiscated by the Miami-Dade Police Department in Florida as part of an investigation and indictment of a ring of cell phone thieves in Miami, Florida, and the other 1,844 phones were locked and possibly also stolen property. *Id*. at 15. Plaintiff averred that all of the phones that it purchased from ACK were useless to Plaintiff and its customers because they were locked and ACK lacked good title. *Id*.

Plaintiff asserted causes of action against ACK for Uniform Commercial Code ("UCC") breach of contract, UCC breach of warranties, theft and conversion, unjust enrichment, and negligent misrepresentation. ECF Dkt. #1 at 16-20. Plaintiff detailed its attempts at recovery from ACK and alleged that when it was finally able to have conversation with ACK, ACK agreed to unlock the phones if Plaintiff paid a fee of $39.00 per phone and if Plaintiff bought ACK's remaining stock of iPhones. *Id.* at 16.

On February 1, 2016, ACK filed an answer. ECF Dkt. #21. The parties thereafter consented to the jurisdiction of the undersigned on February 28, 2017, which the District Court Judge approved on March 2, 2017. ECF Dkt. #s 25, 26.

On April 28, 2017, ACK filed an amended answer and a third-party complaint against Berrylane. ECF Dkt. #34. ACK alleged that in July of 2016, Mr. Abdelwahab, an officer of Berrylane, informed the ACK Sales Director that Berrylane had numerous iPhone 5S phones for sale that were new in their boxes. *Id*. at 35. ACK alleges that it entered into numerous oral agreements with Berrylane to buy 3,550 of the iPhone 5S phones for the sum of $952,991.79. *Id*. at 35-36. ACK avers that in all of the oral agreements with Berrylane, it was understood and agreed by the parties that the phones were to be usable and not stolen and Mr. Abdelwahab never told ACK that their oral agreements involved stolen phones. *Id*. at 36. ACK averred that thereafter, a portion of the phones that Berrylane sold to ACK were confiscated by the Miami-Dade Police Department as a result of an investigation and indictment of a ring of cell phone thieves operating in Miami, Florida. *Id*.

In the first count of its third-party complaint, ACK alleged a UCC breach of contract for Berrylane entering into each oral contract and then delivering nonconforming goods to ACK as a condition of those contracts was that the phones not be stolen. ECF Dkt. #34 at 37-38. ACK's Count Two alleged a UCC breach of warranty as Berrylane delivered phones to which it did not have good title and which were not fit for their ordinary purpose. *Id*. ACK alleged theft and conversion in its third count based upon the stolen phones, unjust enrichment in its fourth count, negligent misrepresentation in its fifth count, and fraud in its sixth count. *Id*. at 38-40.

On May 1, 2017, Plaintiff filed a first amended complaint against ACK, Berrylane and Felix. ECF Dkt. #38. Plaintiff realleged that it is and was engaged in the purchase and sale of cell phones and ACK is and was at all relevant times engaged in procuring, refurbishing, and selling mobile devices, including cell phones, which included a primary focus on Smartphones. ECF Dkt. #38 at 2. Plaintiff further avers that the owner/manager/incorporator of Berrylane, Shadi Abdelwahab, physically delivered the goods at issue in this case to Prime Transport, Plaintiff's freight forwarder, located in Miami, Florida. *Id*. Plaintiff further alleges that the manager of Felix, Ibrahim Algahim

aka Abe Algahim, was also a driver who physically delivered the goods at issue in this case to Prime Transport. *Id.* Plaintiff avers that ACK bought the cell phones at issue in this case from Berrylane and ACK claims that it never possessed the cell phones and the majority of the money paid by Plaintiff to ACK was paid to Defendants. *Id.* Plaintiff further alleges that "[t]o the extent that ACK was acting at the direction of Berrylane and/or Felix, as an agent of Berrylane and Felix, Berryland and Felix are liable to Plaintiff for any acts performed by its agent, ACK." *Id.* at 3.

Plaintiff then reviews its six transactions concerning its purchase of the cell phones at issue from ACK as it set forth in its original complaint, including the purchase orders, supplier agreements and invoices. ECF Dkt. #38 at 3-15. Plaintiff realleges the standard terms and conditions of its purchase orders, and notes the conditions that the cell phones would be unlocked and that ACK have "free and unencumbered legal titles to these goods without any third parties claims or liens." *Id.* at 3. Plaintiff reiterates that ACK sold it a total of 3,550 cell phones and it paid ACK in total the sum of $978,130.00. *Id.* at 16. Plaintiff alleges that of the 3,550 cell phones for which they paid money and then sold to their customers, 1,706 of them were stolen property and were confiscated by the Miami-Dade Police Department in Florida as part of an investigation and indictment of a ring of cell phone thieves in Miami, Florida, and the other 1,844 phones were locked and possibly also stolen property. *Id.* Plaintiff avers that all of the phones that it purchased from ACK were useless to Plaintiff and its customers because they were locked and ACK lacked good title to them. *Id.*

In the first amended complaint, Plaintiff asserts a cause of action for UCC breach of contract, alleging that the purchase orders, supplier agreements and invoices between Plaintiff and ACK constituted six different contracts and Plaintiff requested specifically identified goods from ACK in those contracts with conditions of unlocked iPhones and legal title. ECF Dkt. #38 at 19. Plaintiff alleged that the cell phones were nonconforming because ACK was not the sole owner of the ones that were confiscated as stolen property, and the remaining cell phones were locked. *Id.* Plaintiff averred that it demanded that ACK refund the cost of the nonconforming goods and ACK has failed and refused to do so. *Id.* Plaintiff further alleges that "Defendants Berrylane and Felix are liable to Plaintiff for ACK's breaches of the Contracts as ACK's undisclosed principal." *Id.* Plaintiff

thereafter avers that due to "Defendants' breaches of the Contracts," Plaintiff has been damaged in the amount of the price of the phones, plus incidental damages, but no less than $978,130.00. *Id*.

Plaintiff also asserts a cause of action for UCC breach of warranties, alleging that ACK breached express warranties of fact and description when it failed to deliver conforming goods as it did not have good title to the 1,706 iPhones that it delivered to Plaintiff. ECF Dkt. #38 at 19. Plaintiff alleges that by delivering phones that were not fit for their ordinary purpose, ACK breached implied warranties of merchantability. *Id.* at 20. Plaintiff avers that due to ACK's breaches, it was entitled to reject and did reject acceptance of the goods and "Defendants are liable to Plaintiff for ACK's breaches of ACK's undisclosed principal.*" Id.* Plaintiff thereafter alleges that "[b]y virtue of Defendants' breaches of warranties to Plaintiff, Plaintiff has been damaged" in the amount of the price of the phones, plus incidental damages, but no less than $978,130.00. *Id*.

In Count Three of its first amended complaint, Plaintiff alleges theft and conversion, asserting that "Defendants used deception to deprive Plaintiff of its property, i.e, the funds that Plaintiff wired to ACK for purchase of goods under the Contracts," and "Defendants deceived Plaintiff by representing that ACK had good title to some or all of the goods under the Contracts, though it did not." ECF Dkt. #38 at 20. Plaintiff alleges that these actions constitute theft under Ohio law and it is entitled to recover from "Defendants" an amount believed to be $464,576.00 plus punitive damages and attorney fees for their "intentional, willful, and wanton conduct." *Id.* at 21.

Plaintiff brings a cause of action for unjust enrichment in Count Four of its first amended complaint, alleging that its delivery of payment to ACK constituted the conferring of a benefit upon ACK, "and upon Berrylane and Felix, as undisclosed principals of ACK." ECF Dkt. #38 at 21. Plaintiff avers that ACK was aware of and intended to receive Plaintiff's payment for the phones and allowing "Defendants" to retain the benefit of the payment would be unjust since "Defendants" failed to deliver conforming goods to Plaintiff. *Id*. Plaintiff requests relief in the amount of the price of the goods plus incidental damages, in an amount no less than $978,130.00. *Id.*

In its last count of the first amended complaint, Plaintiff alleges negligent misrepresentation, averring that "Defendants" negligently misrepresented that at least 1,706 of the cell phones were not stolen property when, at the time of the Contracts, they knew or should have known that they were

stolen, which was material to the transactions between the parties and "Defendants negligently failed to disclose, or negligently concealed, the fact" that at least 1,706 of the phones were stolen. ECF Dkt. #38 at 22. Plaintiff further alleges that it justifiably relied upon "Defendants' negligent representations and warranties," to its detriment, and it was damaged in amount no less than $464,576.00 plus punitive damages and attorney fees for "defendants' intentional, willful, and wanton conduct as described herein." *Id.*

On May 12, 2017, ACK filed its answer to the first amended complaint. ECF Dkt. #40. On June 29, 2017, Berrylane and Felix consented to the undersigned's jurisdiction, which was approved by the District Court on the same date. ECF Dkt. #59.

On July 28, 2017, Berrylane and Felix filed the instant motion to dismiss Plaintiff's first amended complaint against them. ECF Dkt. #64. Berrylane also filed an answer to ACK's third-party complaint. ECF Dkt. #65. On August 11, 2017, Plaintiff filed a memorandum in opposition to the motion to dismiss filed by Berrylane and Felix. ECF Dkt. #66. On August 18, 2017, Berrylane and Felix filed a reply brief. ECF Dkt. #68.

On January 16, 2018, a Consent Judgment Entry was issued entering judgment in favor of Plaintiff against ACK on Counts One and Two of its first amended complaint in the amount of $634,033.15. ECF Dkt. #79.

## II.     **STANDARD OF REVIEW**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action..." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). The plaintiff need not set forth "detailed factual allegations," but the pleading standard set forth by the Supreme Court of the United States "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

## III. LAW AND ANALYSIS

Defendants assert in their motion to dismiss that Plaintiff's claims against them are based upon a theory that ACK was acting as their agent, but the first amended complaint contains no factual allegations indicative of an agency relationship between Plaintiff and either Berrylane or Felix. ECF Dkt. #64-1 at 2. Defendants contend that the first amended complaint sets forth no facts demonstrating that Berrylane or Felix had any right to control ACK or that any contract, express or implied, existed between ACK and Berrylane or Felix whereby ACK agreed to sell the phones for them. *Id.* at 2-3. Defendants maintain that ACK was acting on its own behalf as neither Berrylane nor Felix appeared on any of the contracts between Plaintiff and ACK and no facts in the first amended complaint allege the existence of a principal-agent or master-servant relationship between Plaintiff and Berrylane or Felix. *Id.* at 3. Defendants cite to *Murray v. Choice Energy, LLC.*, No. 1:15CV60, 2015 WL 4204398 (S.D. Ohio July 10, 2015) in support of a finding that the Court

should dismiss a complaint for failure to state a claim when a plaintiff who is seeking relief under a theory of agency fails to plead specific facts indicative of an agency relationship. *Id.* at 7.

In response, Plaintiff asserts that the existence of an agency relationship is not a claim, but rather, it is a fact which supports Plaintiff's claims against them and a dispute over an agency relationship is a question of fact. ECF Dkt. #66, citing *MJ Direct Consulting, L.L.C. v. Brooks & Stafford Co.*, 2016-Ohio-7718 (8th Ohio App. Dist. Nov. 10, 2016).

Defendants are correct that a plaintiff must provide more than legal conclusions about the existence of an agency relationship. "A complaint relying on agency must plead facts which, if proved, could establish the existence of an agency relationship. It is insufficient to merely plead the legal conclusion of agency." *McWilliams v. S.E., Inc.*, 581 F.Supp.2d 885, 893 (N.D. Ohio 2008), quoting *Bird v. Delacruz*, No. 04-CV-661, 2005 WL 1625303, at *4 (S.D.Ohio July 6, 2005) (quoting *Gunderson v. ADM Investor Servs., Inc.*, 85 F.Supp.2d 892, 905 (N.D.Iowa 2000)). "While the existence and extent of the agency relationship is a question of fact, the plaintiff must sufficiently allege that an agency relationship existed in order to survive a Rule 12(b)(6) motion to dismiss." *Id.* (quoting *MJ & Partners Restaurant Ltd. Partnership v. Zadikoff*, 10 F.Supp.2d 922, 931 (N.D.Ill.1998)).

Defendants cite to *Murray*, an unreported case from the Southern District of Ohio, in which the District Court granted a motion to dismiss by Defendant Choice Energy, LLC pursuant to Rule 12(b)(6) because the plaintiff sought relief under an agency theory but failed to set forth specific factual allegations in the complaint to plausibly support an agency theory. ECF Dkt. #64-1 at 7, citing *Murray*, 2015 WL 4204398. Defendants contends that in the instant case, much like the plaintiff in *Murray*, Plaintiff has failed to plead specific facts of an agency relationship, such as the right to control and the power to give interim instructions. *Id.* Through *Murray*, Defendants cite to the Restatement (Third) of Agency 1.01 (2006), which provides that "[a]n essential element of agency is the principal's right to control the agent's actions," and elsewhere explains that "[t]he power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." ECF Dkt. #64 at 6, quoting *Murr*ay, 2015 WL 4204398, at *5 (quoting Restatement (Third) of Agency § 1.01 (2006)).

Defendants also cite Ohio caselaw holding that a relationship of agency is created by agreement, either express or implied, where the parties agree that an agent will act on behalf of the principal. ECF Dkt. #64-1 at 6, citing *Ulhaq v. Trauma Serv. Group, P.C.*, 114 Ohio App.3d 113, 114, 682 N.E.2d 1050, 1052 (Ohio Ct.App.1996); *Lewis v. Ohio Real Estate Comm.*, 121 Ohio App.3d 23, 27, 698 N.E.2d 1023, 1025 (Ohio Ct.App.1997). Defendants cite Ohio law in asserting that in determining whether such an agency relationship exists, courts look to see whether the principal has a right to control an agent's conduct when the agent is performing work on behalf of the principal. ECF Dkt. #64-1 at 6, citing *Costell v. Toledo Hosp.*, 98 Ohio App.3d 586, 593, 649 N.E.2d 35, 39 (1994). Defendants note the various factors that Ohio courts look to when determining whether the necessary amount of control exists in order to form an agency relationship. ECF Dkt. #64-1 at 6, citing *Davis v. Conrad Family Ltd. Partnership*, 247 B.R. 690 (Bankr.N.D. Ohio 1999) (citing *Q–Team Nursing Care, Inc. v. Clearview Convalescent Center, Inc*., 1989 WL 65395, at *3 (Ohio App. 10th Dist. June 13, 1989)). Such factors include (1) whether the individual is performing in the course of the principal's business rather than in some ancillary capacity; (2) whether the individual was receiving any compensation from the principal; (3) whether the principal supplied the tools and the place of work in the normal course of the relationship; (4) whether the individual offers his services to the public at large or to one individual at a time; and (5) the length of the relationship. ECF Dkt. #64-1 at 6, citing *Davis,* 247 B.R. 690.

While questions remain as to the existence of an agency relationship in the instant case, the Court finds that Plaintiff has presented sufficiently specific factual allegations in its first amended complaint to plausibly show the existence of an agency relationship between ACK, Berrylane and Felix. Construing the facts alleged in the first amended complaint in a light most favorable to Plaintiff, and accepting Plaintiff's allegations as true, ACK bought the cell phones that it sold to Plaintiff from Berrylane and the owners and manager of Berrylane and Felix physically delivered the contracted for cell phones to Plaintiff's freight forwarder in Miami, Florida. ECF Dkt. #38 at 2. Moreover, ACK never took possession of the phones and the majority of the funds that ACK received from Plaintiff went to Berrylane and Felix. *Id.* Such facts as alleged by Plaintiff sufficiently meet at least some of the factors to render it plausible that an agency relationship exists

between ACK, Berrylane and Felix, including the allegations that ACK acted in the course of the principal's business because Berrylane supplied the cell phones at issue but ACK indicated in its contracts with Plaintiff that it owned and had custody of the cell phones, ACK received compensation for the cell phone transactions but most of that compensation went to Berrylane and Felix, who supplied the cell phones at issue and physically delivered them to Plaintiff's freight forwarder in Florida for the contracts between ACK and Plaintiff.

## IV.    CONCLUSION

For the above reasons, the Court DENIES Berrylane and Felix's motion to dismiss Plaintiff's first amended complaint against them.  ECF Dkt. #64.


Date: March 7, 2018                          ___/s/George J. Limbert_____
                                              GEORGE J. LIMBERT
                                              UNITED STATES MAGISTRATE JUDGE